AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

ORDERED UNSEALED on **06/02/2025    s/ BreanneC**

SEALED

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

**Enoteca Buona Forchetta**
**3011 Beech Street, San Diego, California 92102**

)
)
)
)
)
)

Case No.     25MJ2980-KSC

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachments A-2, A-3

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachments B-1, B-2

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| | |
|---|---|
| 8 U.S.C. § 1324(a)(3) | Knowingly Hiring 10+ Unauthorized Aliens |
| 8 U.S.C. § 1324a | Employment of Unauthorized Alien |
| 18 U.S.C. § 1001 | False Statement |
| 18 U.S.C. § 1015(e) | False Claim to US Citizenship/Nationality |
| 42 U.S.C. § 408(a)(7)(B) | Fraudulent Use of Social Security Number |
| 18 U.S.C. § 1546(b) | Use of False Identification Document |

The application is based on these facts:

See attached Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MICHAEL J HENSLEY      Digitally signed by MICHAEL J HENSLEY
Date: 2025.05.29 11:14:17 -07'00'

*Applicant's signature*

Special Agent, Homeland Security Investigations

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____     *(specify reliable electronic means).*

Date:     5/29/2025 @ 4:18 PM

*Judge's signature*

City and state:   San Diego, California          Hon. Karen S. Crawford, United States Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Michael Hensley, being first duly sworn, hereby depose and state as follows:

**<u>INTRODUCTION AND AGENT BACKGROUND</u>**

1.      I am a Special Agent with United States Homeland Security Investigations (HSI) and have been so employed since December 2016.  In September 2017, I graduated from the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training Program at the Federal Law Enforcement Training Centers (FLETC) in Glynco, Georgia.  While at FLETC, I received training in areas including, but not limited to, criminal law, fraud and financial investigations, and criminal procedures.  Prior to being employed with HSI, I was employed as an Immigration Officer with the United States Citizenship and Immigration Services (USCIS) Office of Fraud Detection and National Security (FDNS) in Boston, Massachusetts District 1.  In this capacity, I was responsible for conducting administrative and criminal investigations to identify potential threats towards national security and public safety.  I was also assigned to grant or deny highly complex and sensitive applications and petitions for immigration benefits as well as enforcing the immigration laws of the United States.  In August 2015, I graduated from the USCIS Fraud Detection and National Security Officer Basic Training Course (FOBTC) in Charleston, South Carolina.  My education includes a Bachelor of Science degree, double major in Legal Studies and Corrections, Parole and Offender Rehabilitation from Western Connecticut State University in Danbury, Connecticut.

2.      I am assigned to the HSI San Diego Worksite Enforcement (WSE) group, which focuses on the enforcement of immigration laws and worksite enforcement operations.  Prior to being on WSE, I was previously assigned to the HSI San Diego Document and Benefit Fraud Task Force (DBFTF).  I am authorized to investigate and enforce violations of federal criminal statutes, including those in Titles 8, 18, and 21 of the United States Code.

3.     My experience as a federal law enforcement officer and criminal investigator includes the investigation and prosecution of violations of criminal laws relating to unlawful entry, employment, and physical presence in the United States.  My current duties include conducting criminal investigations of violations of Federal Statutes and administrative violations of the Immigration and Naturalization Act (INA) and Title 18 of the United States Code.  As part of these duties, I have become involved in the investigation of suspected violations of Title 8, United States Code, Section 1324(a), Unlawful Employment of Aliens.  Through formal and on the job training, I am experienced in crimes involving the unlawful employment of aliens.

4.     I have participated in the execution of numerous search warrants for documents and other evidence, including computers and electronic media.

5.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the following premises ("**Target Location**") and persons ("**Target Subjects**"):

a.     The business located at 3001 and 3011 Beech Street, San Diego, California, 92102, known as Buona Forchetta – South Park/Enoteca Buona Forchetta, as further described in Attachments A-1 and A-2 ("**Target Location**"), incorporated herein by reference.

b.     Nineteen (19) individuals, who are employees of Buona Forchetta, as further described in Attachment A-3 ("**Target Subjects**"), incorporated herein by reference.

6.     This affidavit sets forth facts establishing probable cause to believe that Buona Forchetta – South Park and Enoteca Buona Forchetta (hereinafter "Buona Forchetta") is unlawfully employing aliens without legal work authorization in violation of federal criminal law.  In addition, this affidavit establishes that there is probable cause to believe that the nineteen, Buona Forchetta active employees, identified in Attachment A-3, fraudulently represented their immigration status and submitted false documents

AFFIDAVIT OF SPECIAL AGENT MICHAEL HENSLEY - 2

and/or information in order to seek employment.  I seek authorization to seize the items specified in Attachments B-1 (for the business) and Attachment B-2 (for the individuals).

7.     The information in this affidavit is based on the investigation I have conducted in this case, my conversations with other law enforcement officers who have engaged in various aspects of this investigation, and my review of reports written by other law enforcement officers involved in this investigation.  Because this Affidavit is being submitted for the limited purpose of securing the requested warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only those facts that I believe are relevant to a determination of probable cause to support the issuance of the requested warrant.  When the statements of others are set forth in this Affidavit, they are set forth in substance and in part.  Times listed in the Affidavit are approximate.

## RELEVANT IMMIGRATION AND EMPLOYMENT LAW AND ADDITIONAL KNOWLEDGE OF AFFIANT

8.     Section 274A of the Immigration and Reform Act of 1986 (IRCA) contains provisions that require all employers to verify the employment eligibility of all new employees hired after November 6, 1986. *See* Title 8 U.S.C. § 1324a(b). The Form I-9 (Employment Eligibility Verification), hereinafter referred to as Form I-9, was developed for verifying that persons are eligible to work in the United States.  Employers must ensure that a Form I-9 is completed every time a person is hired to perform labor or services in return for wages or other remuneration.  The Form I-9 is comprised of three sections.

9.     Section 1 is to be completed by the employee at the time of hire.  This section contains the fields of name, address, date of birth, Social Security Number, and the attestation of the employee as to their immigration status in the United States.

10.     Section 2 is to be completed by the employer and consists of three separate columns for List A (Identity and Employment Eligibility), List B (Identity only), and List C (Employment Eligibility only) documents.  In order for an employee to be deemed eligible to work, the employer must examine one document from List A, or one document

from List B and one document from List C.  Examples of List A documents include United States Passports, Certificates of Naturalization, Forms I-551 (sometimes referred to as Permanent Resident cards or "green cards"), or Employment Authorization cards. Examples of List B documents include driver's licenses and voter registration cards. Examples of List C documents include Social Security cards and birth certificates.  The employer is required to examine original documents presented by an employee and then complete this section of the I-9 form within three days of employment beginning.

11.    Section 3 of the I-9 Form, referred to as Supplement B, is completed by the employer under circumstances where the law requires an employee's status to be reverified, when an employee is terminated and rehired within three years of the date the original Form I-9 was completed, or when an employee has changed his or her name.

12.    Employers must retain all I-9 forms for three years after the date a person's employment begins or one year after the person's employment is terminated, whichever is later.

13.    E-Verify is an internet-based system that compares information entered by an employer from an employee's Form I-9 to records available to the U.S. Department of Homeland Security and the Social Security Administration, in order to allow the employer to verify the accuracy of the information submitted.  The system is free to use by employers but not mandated by federal law.

14.    Any person who, during any 12-month period, knowingly hires for employment at least 10 individuals with actual knowledge that the individuals are unauthorized aliens is subject to criminal penalties under Title 8, United States Code, Section 1324(a)(3)(A) & (B).

15.    Intentional hiring of unauthorized aliens is also a violation of Title 8, United States Code, Section 1324a(a)(1).  A person or entity who engages in a pattern and practice of violating this provision is subject to imprisonment and fines.

16.     In addition, a person or entity who willfully submits a Form I-9 to the government containing materially false, fictitious, or fraudulent statements is subject to criminal penalties under Title 18, United States Code, Section 1001.

17.     A person who knowingly makes a false statement that they are a citizen or national of the United States in order to engage unlawfully in employment in the United States is subject to criminal penalties under Title 18, United States Code, Section 1015(e).

18.     It is a crime for an individual to use a Social Security number not assigned to them, with the intent to deceive, in order to obtain anything of value, under Title 42, United States Code, Section 408(a)(7)(B).

19.     Finally, a person who uses an identification document in connection with completing a Form I-9 knowing that the identification document was not issued lawfully for the use by that person is subject to criminal penalties under Title 18, United States Code, Section 1546(b).

20.     As set forth in the remainder of this Affidavit, there is probable cause to believe that a search of the business and the individuals listed in Attachments A-1, A-2, and A-3 will reveal evidence of the foregoing crimes.

## **PROBABLE CAUSE**

### A.     Identification of Buona Forchetta

21.     On November 01, 2020, HSI received a tip identifying Buona Forchetta for alleged employment of illegal immigrants and labor exploitation.  It was reported that the business owner of Buona Forchetta, Matteo CATTANEO, is knowingly employing both illegal immigrants and individuals not authorized to work in the United States.  The tipster claimed that CATTANEO is exploiting these employees by having them work over 12-hour shifts with no breaks.  The tipster also reported that CATTANEO treats these employees poorly by mentally and verbally abusing them.

22.     On January 31, 2025, HSI received follow up tip information that Buona Forchetta employs illegal immigrants and people unauthorized to work in the United States.

The tipster reported that these employees are using different and fake names on the employee schedule.

23. According to the company website ([buonaforchettasd.com](buonaforchettasd.com)), Buona Forchetta is an Italian restaurant that has been in business for over 12 years and its flagship location is located at 3001 Beech Street, San Diego, California 92102.

24. On February 20, 2025, HSI personnel served Buona Forchetta with a Notice of Inspection requiring the company to produce their Forms I-9 within three business days. On February 25, 2025, HSI personnel received a G-28, Notice of Entry of Appearance as Attorney or Accredited Representative, from Jason Feldman, attorney representing Sofia Inc. dba Buona Forchetta. The G-28 states that Jason Feldman is representing Sofia Inc. dba Buona Forchetta. The email consisted of forty Forms I-9 and supporting documentation that purportedly pertained to all current employees of the business.

25. HSI personnel thereafter reviewed the material. As documented below, HSI personnel have identified 19 instances (Buona Forchetta active employees) in which a fraudulent Form I-551, *i.e.*, a green card, was submitted. These instances comprise 47.5%, or nearly half, of all reported employees of Buona Forchetta.

**B.     Fraudulent Green Cards**

26. Our review identified nineteen instances (Buona Forchetta active employees) in which fraudulent green cards were submitted. United States Citizenship and Immigration Services (USCIS) issues a green card to an individual when they become a lawful permanent resident of the United States. Green cards display the alien registration number (A-number) of the individual. An A-number is a unique number assigned to each alien who is processed by the United States. When an individual obtains a green card, multiple immigration records are generated to reflect the event.

27. HSI personnel determined that the cards were counterfeit by querying immigration databases. The queries showed that the A-numbers listed on the cards did not match the names of the persons listed on the cards. In addition, some of the cards showed

1  obvious signs of being fraudulent.  For example, the font on most of the cards was
2  inconsistent.  Most of the counterfeit cards have poor, fine line printing and lack quality
3  detail.  In addition, some of the cards displayed inconsistent holograms or authentication
4  features, inconsistent spacing between names, and poor-quality photographs of the
5  individual.

6      28.    I know from my training and experience that U.S. Citizenship and
7  Immigration Services (USCIS) has issued three versions of green cards since 2010.

8      29.    The following is a version of the green card issued by USCIS in January
9  2023.  This card utilizes updated artwork and displays data fields in different locations than
10 previous versions.  USCIS uses enhanced optical variable ink and new highly secure
11 holographic images on the front and back of the cards.  This version no longer has the
12 cardholder's fingerprint on the front of the card.

13

18
19

20     30.    The following is a version of the green card issued by U.S. Citizenship and
21 Immigration Services in May 2017. This version includes three transparent stars,
22 holographic features, as well as tactile features on the front of the card.

23
24
25
26
27



31.    The following is a version of the green card issued by U.S. Citizenship and Immigration Services in May 2010.  This green card utilizes fraud resistant security features such as holographic images, laser engraved fingerprints, and high-resolution micro-images.  This laser-engraved version includes a holographic feature over the right side of the photo zone and an eagle's head in the upper left of the card composed of color-shifting ink.

32.    The following is a version of the green card issued by U.S. Citizenship and Immigration Services beginning in 1997, and continuing until 2010. The revised card bore a new name, "Permanent Resident Card," but retained the Form I-551 number. A unique document number (also known as a card number) was also added to the card. In May 2004, the design was modified slightly with the Department of Homeland Security seal and a detailed hologram on the front of the card. The last of these green cards expired in 2020.

1



2

3

4

5

6

7

8    33.    The following two examples are of legitimate green cards submitted by

9    employees of Buona Forchetta:

10

11

12



13

14

15

16

17

18

19



20

21

22

23

24    Two legitimate green cards (front) submitted by employees of Buona Forchetta[1].

25

26

27    [1] Some personally identifiable information has been redacted for privacy reasons.

AFFIDAVIT OF SPECIAL AGENT MICHAEL HENSLEY - 9

34.    When the counterfeit green cards, submitted by employees at Buona Forchetta and in turn provided to HSI, are compared to an authentic green card, noticeable discrepancies are apparent. The following six examples differ in notable ways:







1
2
3
4
5
6
7
8
9
10
11
12
13







14
15
16
17
18
19
20
21      35.    The above six green cards, accepted as proof of employment eligibility by

22  Buona Forchetta, contained the following issues: 1) name and date of birth, normally

23  located above the photo, do not appear in the correct font and wave pattern. 2) Biographical

24  information, displayed in the middle of the card, varies in smaller and larger font than the

25  genuine card. 3) Date of birth design and font, normally positioned to the left of the

26
27

1   photograph overlapping the image, is either missing or does not overlap the photo on the
2   card.[2]

3      36.    HSI personnel undertook an attempt to determine the true identities of the
4   persons associated with the nineteen fraudulent green cards.  Specifically, personnel
5   queried databases to look for the names, dates of birth, and photographs displayed on the
6   fraudulent cards.  The database queries revealed the following:

7      37.    One of the cards submitted contained the name Jaime Castaneda (**Target
8   Subject 2**) and a particular date of birth.  I searched government databases and identified
9   an individual named Jaime Morales Castaneda who has the same birth date, and his
10  California driver's license photograph resembles the photograph on the fraudulent card.
11  Morales Castaneda was previously arrested for False Claim to Citizenship and Misuse of a
12  Passport at the San Ysidro Port of Entry on April 1, 2009. Castaneda was removed from
13  the United States the following day on April 2.

14     38.    One of the cards submitted contained the name Areli De Los Santos Ramirez
15  (**Target Subject 4**) and a particular date of birth.  I searched government databases and
16  identified an individual named Areli De Los Santos Ramirez who has the same birth date
17  and resembles the photograph on the fraudulent card.  De Los Santos Ramirez was
18  encountered by Customs and Border Protection officers in 2017, and admitted to
19  overstaying her B2 non-immigrant visitor visa. She was permitted to withdraw her
20  application for admission in lieu of formal removal proceedings.

21     39.    One of the cards submitted contained the name Omar Hernandez Saldana
22  (**Target Subject 7**) and a particular date of birth.  I searched government databases and
23  identified an individual named Omar Sandro Saldana Hernandez who has the same birth
24  date. Saldana Hernandez is a non-immigrant B1/B2 Border Crosser, without authorization

25

26  [2] The copies of the identification documents that the business provided in connection with the I-9 audit were in
27  black-and-white.  Most of the copies were of poor quality, especially those determined to be fraudulent.

to work in the United States.  Saldana Hernandez submitted a copy of his Mexican passport when applying for his B1/B2 border crossing privilege, and the photograph on his Mexican passport resembles the photograph provided on the fraudulent card submitted by Buona Forchetta.

40.     One of the cards submitted contained the name Jordi Lazaro Ozuna (**Target Subject 9**) and a particular date of birth.  I searched government databases and identified an individual named Jordi Lazaro Osuna who has the same date of birth.  Lazaro Osuna has four prior encounters with United States Border Patrol in the San Diego sector in 2021. Lazaro Osuna's photograph on the fraudulent card resembles his photograph taken by Border Patrol at the time of his last encounter in 2021.

41.     One of the cards submitted contained the name Elizabeth Moya and a particular date of birth.  I searched federal government databases and identified an individual named Elizabeth Moya Cambronero (**Target Subject 10**) who has the same date of birth and her California driver's license photograph resembles the photograph on the fraudulent card.  Moya Cambronero is currently a B2 non-immigrant overstay, without authorization to work in the United States.

42.     One of the cards submitted contained the name Jesus Ortiz Rosales (**Target Subject 11**) and a particular date of birth.  I searched government databases and identified an individual named Jesus Ortiz Rosales who has the same date of birth and resembles the photograph on the fraudulent card.  Ortiz Rosales has an approved I-130, Petition for Alien Relative, and I-601A, Provisional Unlawful Presence Waiver.  Neither of these authorizations or petitions permits Ortiz Rosales to work within the United States. The submitted card purports to not expire until year 2028, but the last Permanent Resident Cards of the same type issued expired in 2020.

43.     One of the cards submitted contained the name Marcelino Pedraza and a particular date of birth.  I searched government databases and identified an individual named Marcelino Pedraza Martinez (also goes by Marcelino Pedraza Cruz) (**Target**

**Subject 12**) who has the same date of birth and his California driver's license photograph resembles the photograph on the fraudulent card. Pedraza Martinez's last encounter with United States Border Patrol was on May 18, 2010, after which he was permitted to voluntarily return to Mexico.

44. For all of the individuals listed in paragraphs 37 through 43, immigration records confirm that none of the individuals had lawful permanent resident status, none are citizens of the United States, and none had valid work authorization at the time of hiring by Buona Forchetta.

45. For the individuals listed below, HSI was not able to associate a true identity with the fraudulent green cards presented. However, I was able to confirm that these cards were in fact fraudulent because the cards either contained an A-number that did not match the person's name according to immigration records, or contained an A-number that does not exist at all in immigration records. In my training and experience, it is highly likely that these individuals are illegally in the United States without valid work authorization because otherwise there would be no need to submit a fraudulent green card during the Form I-9 process.

     a. Luis Alfonso Bustamante, DOB: 10/23/1998 (**Target Subject 1**)
     b. Melissa Cornejo, DOB: 09/22/1999 (**Target Subject 3**)
     c. Alp Deveci, DOB: 11/30/1993 (**Target Subject 5**)
     d. Felipe Gomez Cabrera, DOB: 10/31/1988 (**Target Subject 6**)
     e. Oscar Jimenez Garcia, DOB: 09/01/1987 (**Target Subject 8**)
     f. Luis Ponce, DOB: 09/04/1979 (**Target Subject 13**)
     g. Yolanda Ramirez, DOB 06/09/1975 (**Target Subject 14**)
     h. Williams Reyes Callejas, DOB: 08/18/1987 (**Target Subject 15**)
     i. Josue Rodriguez, DOB: 10/15/1993 (**Target Subject 16**)
     j. Jhonatan Sanchez Palma, DOB: 03/13/1990 (**Target Subject 17**)
     k. Hugo Sanchez, DOB: 09/14/1986 (**Target Subject 18**)
     l. Luis Tinajero, DOB: 01/08/1976 (**Target Subject 19**)

**D.    Surveillance**

46. On May 22, 2025, at approximately 0900 hours, HSI San Diego Worksite Enforcement (WSE) Special Agents (SA) initiated surveillance on and around the Buona

1   Forchetta – South Park location, located on 3001 Beech Street, San Diego, California,
2   92102.  During surveillance, HSI WSE observed several employees arriving at the
3   restaurant between 0900 and 1200 hours.  HSI WSE observed the same employees walking
4   into a neighboring business named "Enoteca Buona Forchetta", located at 3011 Beech
5   Street, San Diego, California, 92102.  In between Buona Forchetta – South Park and
6   Enoteca Buona Forchetta is a beauty salon called "Goldline", which is not connected to
7   Buona Forchetta – South Park or Enoteca Buona Forchetta.

8       47.    During surveillance operations, HSI WSE SAs were able to identify and
9   recognize Marcelino Pedraza Martinez, Oscar Jimenez Garcia and Jaime Morales
10  Castaneda, based on facial appearances matching to the photos on the documents submitted
11  with their I-9s.

12      48.    Of particular interest, HSI WSE SAs observed a California-plated vehicle
13  registered to Marcelino Pedraza Cruz (also goes by Marcelino Pedraza Martinez), who –
14  as described above in paragraph 43 – used fraudulent identity documents to gain
15  employment at Buona Forchetta.  Pedraza Martinez was seen working at the restaurant and
16  entering/exiting this vehicle.

17      49.    On May 23, 2025, at approximately 1045 hours, HSI WSE initiated
18  surveillance on and around Buona Forchetta – South Park and Enoteca Buona Forchetta.
19  HSI WSE SAs observed several employees arriving at the restaurant(s) between 0900 and
20  1200 hours.  HSI WSE SAs observed employees walking into both Buona Forchetta –
21  South Park and Enoteca Buona Forchetta.

22      50.    Between 1600 and 1700 hours, HSI WSE SAs observed additional
23  employees arriving at the restaurant(s).  During surveillance operations, HSI WSE SAs
24  were able to identify and recognize Luis Alfonso Bustamante, Oscar Jimenez Garcia, Jesus
25  Ortiz Rosales, Jordi Lazaro Osuna, Yolanda Ramirez, Hugo Sanchez, Luis Tinajero, and
26  Williams Reyes Callejas, based on facial appearances matching to the photos on the
27  documents submitted with their I-9s.

51.    HSI WSE SAs observed California-plated vehicles registered to Jordi Lazaro Osuna and Jesus Ortiz Rosales.  Jordi Lazaro Osuna and Jesus Ortiz Rosales were seen working at the restaurant and entering/exiting these vehicles.

52.    On May 25, 2025, at approximately 1500 hours, HSI WSE SAs initiated surveillance on and around Buona Forchetta – South Park and Enoteca Buona Forchetta. HSI WSE SAs observed several employees working at the restaurant(s).  HSI WSE SAs observed employees walking into both Buona Forchetta – South Park and Enoteca Buona Forchetta.

53.    During surveillance operations, HSI WSE SAs were able to identify and recognize Yolanda Ramirez, Oscar Jimenez Garcia, Luis Tinajero and Jordi Lazaro Osuna, based on facial appearances matching to the photos on the documents submitted with their I-9s.

54.    HSI WSE SAs observed the California-plated vehicle registered to Jordi Lazaro Osuna.

55.    The hours listed for Buona Forchetta are Monday-Thursday, 12:00 pm through 3:00 pm during lunch hours and dinner hours are 5:00 pm through 9:30 pm.  The business hours for Buona Forchetta for Friday are 12:00 pm through 3:00 pm, and 5:00 pm through 10:00 pm.  HSI WSE expects to execute this search warrant in the afternoon prior to the dinner hours when the most employees arrive at the business premises.

**E.    Training and Experience**

56.    One of the things that I seek to seize are any identification cards for the individuals associated with the fraudulent green cards.    Based on my training and experience, I know that individuals carry identification documents on their person, such as in their wallets.  I know that Section 264(e) of the INA requires permanent residents to carry their green cards with them at all times, although I know that individuals who use fraudulent identification do not always do so.  Identification documents will be important evidence.  If individuals possess any of the fraudulent identification documents that were

1   submitted during the Form I-9 process, then that will tie them personally to the false

2   submissions.  If individuals possess any valid identification, that will help show that the

3   fraudulent green cards are in fact fraudulent by establishing their true identity.

4          57.    I know that it is common in the United States for aliens without legal work

5   authorization to submit fraudulent identity documents in order to obtain employment.

6          58.    I know that some U.S. employers disregard employment verification

7   processes for the purposes of exploiting labor for financial advantage.  In particular, I know

8   in my training and experience that certain employers will hire individuals with illegal work

9   status because employers can pay these individuals a lower wage.  In addition, workers

10  without legal status are less likely to complain about working conditions because they do

11  not want to draw attention to themselves, given their immigration status.  I know in this

12  case that, as described above, the fraudulent nature of some of the green cards would have

13  been apparent to anyone who examined them with any care.

14         59.    I know from training and experience that employers who hire aliens without

15  valid work authorization for the purpose of cheaper labor or to avoid labor regulations often

16  will conceal their illegal hiring practices by requesting that their applicants supply

17  employment eligibility documents and identity documents but will knowingly accept

18  fraudulent and/or counterfeit documentation in order to nominally satisfy the Form I-9

19  reporting requirements.

20         60.    I know based on my training and experience that a business, such as Buona

21  Forchetta, is likely to retain additional payroll and other records such as work calendars,

22  timesheets, and timecards showing who worked at the business, for what period of time,

23  and how much individuals were paid.  These materials are important to establishing the

24  crimes identified above, given the need to show that any given unauthorized worker did in

25  fact work at the business.

26         61.    On February 25, 2025, Buona Forchetta provided HSI personnel, via email,

27  documents requested as part of the I-9 inspection process.  The documents that were

1   provided included Form G-28 indicating representation of Buona Forchetta, an employee
2   roster summary, a statement letter from the owner of Buona Forchetta, and the most current
3   payroll information. Only basic information was requested and based on my training and
4   experience, additional, more detailed employee and payroll information, not previously
5   provided, will be found at the business.

6                              **MANNER OF EXECUTION**

7          62.    As set forth above, HSI intends to execute this warrant at a time when the
8   majority of workers are believed to be at the work premises (**Target Location**) described
9   in Attachments A-1 and A-2. HSI intends to detain the employees present at the premises
10  to minimize the risk of harm to officers, to ensure the orderly completion of the search, to
11  minimize the risk of flight, and for the purpose of determining whether any of the
12  employees encountered on-site are any of the individuals described in Attachment A-2, *i.e.*,
13  any individuals associated with the fraudulent green cards and other false Form I-9
14  submissions. In order to determine if any of the individuals encountered are in fact an
15  individual described in Attachment A-2, agents plan to ask the individuals their name and
16  to fingerprint them, if necessary. Agents plan to take these steps to ensure that they are
17  searching the correct individuals, given that the fraudulent green card photographs are of
18  uneven quality, and that some individuals look slightly different compared to their
19  identification photographs.

20         63.    Additionally, HSI SAs will search the physical work premises at the **Target
21  Location** for records, documents, files, or materials (regardless of whether printed, written,
22  handwritten, or typed), that constitute evidence, instrumentalities, or fruits of violations of
23  8 U.S.C. § 1324(a); 8 U.S.C. § 1324a; 18 U.S.C. § 1001; 18 U.S.C. § 1015(e); and 18
24  U.S.C. § 1546, 42 U.S.C. § 408(a)(7)(B). The items to be seized will include:

25      1)  employment records for current and former employees, including but not limited to,
26          personnel files, time cards, production cards, payroll information, bank account
27          information, employee work schedules, employment applications, video recordings

of employees, photographs of employees, employment verification documents, Social Security Administration Employer Correction Requests (No-Match letters), Social Security Administration Request for Employee Information (No-Match letters), and Department of Homeland Security (DHS) immigration eligibility documents including DHS Forms I-9;

2) any employee identification documents and immigration documents in any form, to include but not limited to, immigration visas, entry documents, passports, Social Security cards, Form I-551s, employment authorization documents; any correspondence with government agencies pertaining to employment, such as the Department of Homeland Security, Social Security Administration, and United States Citizenship and Immigration Services;

3) Any documents pertaining to the true identities of the individuals identified in Attachment A-3;

4) Documents and records pertaining to the ownership and management of the business;

5) Records and information relating to recruiting individuals, hiring individuals, verification of an individual's true identity, and their status to legally work in the United States;

6) Communications regarding the use, sourcing, manufacturing, and/or procurement of fraudulent identification documents.

64.    For officer safety, HSI will detain all individuals present at the **Target Location**, and make efforts to identify each individual. HSI plans to arrest civilly the **Target Subjects** listed in Attachment A-3, and process them for immigration violations. As reflected in Attachment B-1, HSI also will search the business for employment records and associated items and otherwise attempt to conduct interviews in furtherance of the crimes listed in the warrant. HSI will search the **Target Subjects** for:

1)  Identity documents or copies of identity documents, in any form, and whether

fraudulent or not, including, but not limited to:

    a.    Form I-551 Permanent Resident Card ("Green Card");
    b.    Form I-766 Employment Authorization Document Card;
    c.    U.S. and foreign passports;
    d.    Visas;
    e.    I-94 Departure Records;
    f.    birth certificates;
    g.    Social Security cards;
    h.    foreign national identity documents;
    i.    driver's licenses;
    j.    applications to obtain such documents;

2)  Pay stubs or other records reflecting employment at **Target Location**.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

AFFIDAVIT OF SPECIAL AGENT MICHAEL HENSLEY - 20

1

## CONCLUSION

2      65.     Based on the foregoing, I seek authorization to search the premises specified

3    in Attachments A-1 and A-2, the **Target Location**, for the items specified in Attachment

4    B-1.     Attachment A-1 describes the Buona Forchetta – South Park premises and

5    Attachment A-2 describes the Enoteca Buona Forchetta premises to be searched.

6    Attachment B-1 describes the items I seek to seize from the **Target Location**. I further

7    seek authorization to search the **Target Subjects** specified in Attachment A-3, for the items

8    specified in Attachment B-2. Attachment A-3 contains depictions of the fraudulent green

9    cards described above. Attachment B-2 describes the items I seek to seize from the **Target**

10   **Subjects**.

11

MICHAEL J HENSLEY

Digitally signed by MICHAEL J HENSLEY
Date: 2025.05.29 11:15:14 -07'00'

12   _____
     Michael Hensley, Affiant

13   Special Agent
     Homeland Security Investigations

14

15   The above-named agent provided a sworn statement to the truth of the foregoing affidavit

16   by telephone on 29th day of May, 2025.

17

18   _____

19   Hon. Karen S. Crawford
     United States Magistrate Judge

20

21

22

23

24

25

26

27

**ATTACHMENT A-2**

**Property to Be Searched**

The property, located at 3011 Beech Street, San Diego, California, 92102, known as **Enoteca Buona Forchetta**.  Enoteca Buona Forchetta is described as a tan building with a glass door, black trim and white brick laid underneath. The windows display "Buona Forchetta" on both sides in between the entrance door.  Together with the property to be searched described in Attachment A-1, **Buona Forchetta – South Park**, the properties described in Attachments A-1 and A-2 comprise the "**Target Location**." In between both properties is a beauty salon identified as "Goldline."  During surveillance operations, employees are identified to be working and walking throughout both Buona Forchetta – South Park and Enoteca Buona Forchetta locations during their shifts.  Buona Forchetta – South Park is located to the west in the neighboring building structure.  The requested authorization to search includes both Buona Forchetta – South Park and Enoteca Buona Forchetta properties.



Attachment A-2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16 **Enoteca Buona Forchetta**                    **Buona Forchetta – South Park**
17
18
19
20
21
22
23
24
25
26
27

Attachment A-2

**ATTACHMENT A-3**

**People to Be Searched – Target Subjects**

1.     Luis Alfonso BUSTAMANTE DOB: 10/23/1998

 

2.     Jaime MORALES CASTANEDA, DOB: 04/21/1989, Real A# 088716257

 

3.     Melissa CORNEJO, DOB: 09/22/1999

 

Attachment A-3

1

2    4.    Areli DE LOS SANTOS RAMIREZ, DOB: 12/28/1985, Real A#

3 216266648, Prior B2 overstay.

4

5

6        

7

8

9

10

11    5.    Alp DEVECI, DOB: 11/30/1993

12

13

14        

15

16

17

18

19

20    6.    Felipe GOMEZ CABRERA, DOB: 10/31/1988

21

22

23        

24

25

26

27

Attachment A-3

7.    Omar Sandro SALDANA HERNANDEZ, DOB: 08/09/1973, B2 non-immigrant, FINS: 7506609

 

8.    Oscar JIMENEZ GARCIA, DOB: 09/01/1987

 

9.    Jordi LAZARO OSUNA, DOB: 02/09/2000, FINS: 1312115628

 

Attachment A-3

10.    Elizabeth MOYA CAMBRONERO, DOB: 05/06/1986, B2 overstay

 

11.    Jesus ORTIZ MORALES, DOB: 02/07/1970, Real A# 214746234

 

12.    Marcelino PEDRAZA MARTINEZ, DOB: 07/03/1981, Real A# 095729745

 

Attachment A-3

1

2

3     13.     Luis PONCE, DOB: 09/04/1979

4

5

6      

7

8

9

10     14.     Yolanda RAMIREZ, DOB: 06/09/1975

11

12

13

14      

15

16

17

18

19     15.     Williams REYES CALLEJAS, DOB: 08/18/1987

20

21

22

23      

24

25

26

27

Attachment A-3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

16.    Josue RODRIGUEZ, DOB: 10/15/1993

 

17.    Jhonatan SANCHEZ PALMA, DOB: 03/13/1990, name spelled wrong on green card.

 

18.    Hugo SANCHEZ, DOB: 09/14/1986

 

Attachment A-3

1

19.    Luis TINAJERO, DOB 01/08/1976

2

3

    

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Attachment A-3

**ATTACHMENT B-1**

**Particular Things to be Seized From Target Location as Described in Attachments A-1 and A-2**

The following records, documents, files, or materials (regardless of whether printed, written, handwritten, or typed), that constitute evidence, instrumentalities, or fruits of violations of 8 U.S.C. § 1324(a); 8 U.S.C. § 1324a; 18 U.S.C. § 1001; 18 U.S.C. § 1015(e); and 18 U.S.C. § 1546, 42 U.S.C. § 408(a)(7)(B), namely:

1.     Employment records for current and former employees, including but not limited to, personnel files, time cards, production cards, payroll information, bank account information, employee work schedules, employment applications, video recordings of employees, photographs of employees, employment verification documents, Social Security Administration Employer Correction Requests (No-Match letters), Social Security Administration Request for Employee Information (No-Match letters), and Department of Homeland Security (DHS) immigration eligibility documents including DHS Forms I-9;

2.     Any employee identification documents and immigration documents in any form, to include but not limited to, immigration visas, entry documents, passports, Social Security cards, Form I-551s, employment authorization documents;

3.     Any correspondence with government agencies pertaining to employment, such as the Department of Homeland Security, Social Security Administration, and United States Citizenship and Immigration Services;

4.     Any documents pertaining to the true identities of the individuals identified in Attachment A-3;

5.     Documents and records pertaining to the ownership and management of the business;

1    6.    Records and information relating to recruiting individuals, hiring

2  individuals, verification of an individual's true identity, and their status to legally work in

3  the United States;

4    7.    Communications regarding the use, sourcing, manufacturing, and/or

5  procurement of fraudulent identification documents.

Attachment B-1

**ATTACHMENT B-2**

**Particular Things to be Seized from the Individuals Identified in A-3**

The following records, documents, files, or materials that constitute evidence, instrumentalities, or fruits of violations of 8 U.S.C. § 1324(a); 8 U.S.C. § 1324a; 18 U.S.C. § 1001; 18 U.S.C. § 1015(e); and 18 U.S.C. § 1546, 42 U.S.C. § 408(a)(7)(B), namely:

1.    Identity documents or copies of identity documents, in any form, and whether fraudulent or not, including, but not limited to:

        a.    Form I-551 Permanent Resident Card ("Green Card");
        b.    Form I-766 Employment Authorization Document Card;
        c.    U.S. and foreign passports;
        d.    Visas;
        e.    I-94 Departure Records;
        f.    birth certificates;
        g.    Social Security cards;
        h.    foreign national identity documents;
        i.    driver's licenses;
        j.    applications to obtain such documents;

2.    Pay stubs or other records reflecting employment at **Target Location**.